IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01065-PAB-MDB

DELBERT ELMER SGAGGIO JR,

    Plaintiff,

v.

GOVERNOR JARED POLIS, in personal and professional capacity,
MICHAEL J ALLEN, Elected Official/District Attorney, of El Paso and Teller Counties, in personal and professional capacity,

    Defendants.

---

## ORDER
---

This matter comes before the Court on Defendant Michael J. Allen's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Docket No. 26] and Governor Polis's Motion to Dismiss [Docket No. 30].  The Court has jurisdiction under 28 U.S.C. § 1331.

## I. PROCEDURAL HISTORY

Plaintiff Delbert Elmer Sgaggio, Jr. filed this action on April 27, 2023.  Docket No. 1.  He brings one claim for violation of his rights under the Second Amendment of the United Stated Constitution against Jared Polis, the Governor of Colorado, and Michael Allen, the District Attorney for the Fourth Judicial District of Colorado.  *Id.* at 8.  On May 11, 2023, Mr. Sgaggio filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction.  Docket No. 11.  The motion asks the Court to enjoin Governor Polis and Mr. Allen from enforcing what Mr. Sgaggio terms "unconstitutional gun laws."

*Id.* at 17.  Governor Polis and Mr. Allen filed responses to Mr. Sgaggio's motion on June 8, 2023.  Docket Nos. 27, 29.  The defendants also filed motions to dismiss Mr. Sgaggio's complaint.  Docket Nos. 26, 30.  Mr. Sgaggio replied to Governor Polis' response to Mr. Sgaggio's motion on June 13, 2023.  Docket No. 32.[1]  Mr. Sgaggio filed responses to the defendants' motions to dismiss on June 22 and June 25, 2023.  Docket Nos. 37, 38.

## II.  BACKGROUND

Mr. Sgaggio's complaint appears to challenge the constitutionality of three Colorado statutes: Colo. Rev. Stat. § 18-1-1001, § 18-12-112, and § 13-14.5-103.  Docket No. 1 at 3.

Section 18-1-1001 requires criminal defendants who are subject to a mandatory protection order and charged with certain crimes to relinquish their firearms to someone who does not live in the same household.  Colo. Rev. Stat. § 18-1-1001(9)(h)(II).  Mr. Sgaggio appears to allege that Mr. Allen has applied this statute to Mr. Sgaggio's son and that, as a result, Mr. Sgaggio is unable to take possession of four firearms belonging to his son.  Docket No. 1 at 5.

Section 18-12-112 requires background checks for private firearm transfers.  Colo. Rev. Stat. § 18-12-112.  Mr. Sgaggio alleges that he "seek[s] to transfer firearms and purchase firearms without doing back ground [sic] checks."  Docket No. 1 at 5.  He argues that conducting a background check is "a defacto [sic] Gun registration."  *Id.*

---

[1] Mr. Sgaggio filed a reply to Mr. Allen's response to Mr. Sgaggio's motion on June 19, 2023.  Docket No. 36.  However, the deadline for Mr. Sgaggio to reply was June 15, 2023.  *See* Docket No. 12.  The Court will not consider this reply in its ruling.

Section 13-14.5-103 authorizes the temporary removal of firearms from a person who a judge determines, based on sworn testimony after a hearing, poses significant risk of injury to self or others in the near future. Colo. Rev. Stat. § 13-14.5-103. An order authorizing such removal is an "extreme risk protection order" ("ERPO"). Colo. Rev. Stat. § 13-14.5-102(3). Such an order may be requested by the person's family or household member, a community member, law enforcement officer or agency, licensed medical or mental health care provider, licensed educator, or district attorney. Colo. Rev. Stat. §§ 13-14.5-103(1)(a-b). Mr. Sgaggio alleges that he "face[s] a credible threat that temporary extreme risk protection orders[ ] will be brought against [him]" because "[b]eing a spiritual guide, journalist, and civil rights activist puts [him] in Government Cross hairs [sic]." Docket No. 1 at 5-6.

Mr. Sgaggio's motion for a temporary restraining order and preliminary injunction requests an injunction to prevent Governor Polis and Mr. Allen from enforcing the challenged statutes. Docket No. 11 at 17. Governor Polis and Mr. Allen argue that Mr. Sgaggio lacks standing to challenge the statutes and that, even if he did have standing, his claim fails as a matter of law. Docket No. 26 at 5; Docket No. 30 at 1. Mr. Allen also argues that Mr. Sgaggio's claim against him should be dismissed because, as a prosecutor, he has absolute immunity. Docket No. 26 at 12-13.

### III. LEGAL STANDARD

The defendants move to dismiss Mr. Sgaggio's complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket No. 26 at 1; Docket No. 30 at 1. Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in

3

the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). Ultimately, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because it is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).[2]

Because Mr. Sgaggio is proceeding *pro se*, the Court will construe his objections and pleadings liberally without serving as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## IV. ANALYSIS

### A. Standing

The defendants argue that Mr. Sgaggio lacks standing to challenge the statutes at issue. Docket No. 26 at 5-12; Docket No. 30 at 2-9. To establish Article III standing, a plaintiff must allege that he has "suffered an injury in fact– an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Injury in fact is a constitutional requirement.") (citations and quotation marks

---

[2] Given the Court's resolution of defendants' Rule 12(b)(1) arguments, it is not necessary to consider defendants' Rule 12(b)(6) arguments.

omitted). An injury is particularized if it affects the plaintiff in "a personal and individual way." *Spokeo*, 578 U.S. at 339. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist;" it must be "real," not "abstract." *Id*. Furthermore, "[a] federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury.'" *Warth v. Seldin,* 422 U.S. 490, 499 (1975) (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 (1973)).

In some narrow circumstances, a plaintiff may seek pre-enforcement review of a law he fears may be enforced against him in the future. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1108-09 (10th Cir. 2007). Consistent with the usual standing requirements described above, courts have held that, for a threat of enforcement to be sufficient for Article III injury, a plaintiff must "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The plaintiff's fear must be an "objectively justified fear of real consequences." *D.L.S. v. Utah,* 374 F.3d 971, 975 (10th Cir. 2004).

### 1.  Section 18-1-1001: Protection order against a defendant

Section 18-1-1001 creates a mandatory protection order against any person charged with violating Colorado's criminal code, which prohibits the person from harassing, molesting, intimidating, retaliating against, or tampering with any witness to or victim of the alleged crime. Colo. Rev. Stat. § 18-1-1001. When the crime includes an act of domestic violence that involved physical force, the court is required to order the defendant to "[r]elinquish, for the duration of the order, any firearm or ammunition in the defendant's immediate possession or control or subject to the defendant's

5

immediate possession or control." Colo. Rev. Stat. § 18-1-1001(9)(a)(I)(B). To comply with the order, a defendant may sell or transfer a firearm he possesses or controls to a private party. Colo. Rev. Stat. § 18-1-1001(d)(III). However, a defendant may not transfer the firearm to a private party living in the same residence at the time of the transfer. Colo. Rev. Stat. § 18-1-1001(h)(II).

Mr. Sgaggio's complaint does not allege that Mr. Sgaggio is subject to a protection order under § 18-1-1001. *See generally* Docket No. 1. Instead, he alleges that his son is subject to a protection order and that the restrictions placed on his son's ability to transfer the son's firearms infringe on Mr. Sgaggio's Second Amendment rights. *Id.* at 5. He claims that, "when[ ] [Mr. Allen] enforced Section 18-1-1001 . . . on [sic] my son, it also took away my rights." *Id*. He states that he is "currently . . . not allowed to take possession of[ ] [his] [s]on's Ak 47, 9mm Carbine, Pump shot gun and AR 15." *Id.* Mr. Sgaggio appears to be arguing that the protection order entered against his son under § 18-1-1001 infringes on Mr. Sgaggio's constitutional right to receive his son's firearms.

These allegations are insufficient to satisfy Mr. Sgaggio's burden[3] to establish standing because they do not show that he has suffered an invasion of a legally protected interest. *See Lujan*, 504 U.S. at 560. Mr. Sgaggio offers no support for the proposition that the Second Amendment protects an individual's right to receive

---

[3] Mr. Sgaggio correctly points out that it is the government's burden to demonstrate that firearm regulations do not violate the Second Amendment. Docket No. 38 at 3; *see New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). However, it is the plaintiff's burden to clearly allege facts demonstrating that he has Article III standing in order to proceed with his case. *Spokeo*, 517 U.S. at 338 (citing *FW/PBS, Inc. v City of Dallas,* 493 U.S. 215, 231 (1990); *Warth,* 422 U.S. at 498)).

6

particular firearms from an individual who has been ordered to relinquish them pursuant to an otherwise valid law, and the Court is aware of none.  Mr. Sgaggio does not allege that the statute violates his Second Amendment rights in any other way.[4]  Accordingly, Mr. Sgaggio has failed to allege that he has suffered an invasion of a legally protected interest and therefore cannot establish standing.  *See Lujan*, 504 U.S. at 560.

Mr. Sgaggio's allegations are also insufficient to establish standing for his challenge to § 18-1-1001 because he fails to allege that he has suffered an injury that is "actual or imminent, not conjectural or hypothetical."  *Id.* (internal quotations omitted).  Nowhere in the complaint does Mr. Sgaggio allege that his son resides with him.  In absence of this allegation, Mr. Sgaggio is unable to show that § 18-1-1001 disqualifies him from receiving his son's firearms, and he is therefore unable to establish that the statute has caused an actual or imminent violation of his rights.  Moreover, even if the complaint did allege that Mr. Sgaggio's son resides with him,[5] such allegation would establish no more than a hypothetical injury.  The complaint alleges that Mr. Sgaggio is "not allowed to take possession of" his son's firearms, Docket No. 1 at 5, but the complaint does not allege that his son wanted to transfer the firearms to Mr. Sgaggio or that Mr. Sgaggio agreed to receive his son's firearms.  It is therefore unclear whether Mr. Sgaggio's challenge is intended to establish a hypothetical right to receive the

---

[4] The complaint is not entirely clear as to whether Mr. Sgaggio intended to challenge to § 18-1-1001 on behalf of his son, but Mr. Sgaggio's reply to Governor Polis' response to the emergency motion states that his lawsuit "has nothing to do[ ] with the rights of [his] son."  Docket No. 32 at 8.

[5] Although Mr. Sgaggio does not allege this fact, Mr. Allen's motion to dismiss states that Mr. Sgaggio's son, who was released on bond following his arrest, resides at the same address that Mr. Sgaggio has provided to the Court as his home address.  Docket No. 26 at 7.

firearms or whether Mr. Sgaggio seeks redress for a harm that he is actually experiencing. Furthermore, standing requires "a causal connection between the injury and the conduct complained of" such that the injury is not "the result of the independent action of some third party." *Lujan*, 504 U.S. at 560 (brackets and citation omitted). In absence of an allegation that his son would transfer the firearms to Mr. Sgaggio if he were not barred from doing so by § 18-1-1001, Mr. Sgaggio has not satisfied this requirement.[6] Thus, Mr. Sgaggio has failed to establish standing to challenge § 18-1-1001.

### 2. Section 18-12-112: Background check requirement

Section 18-12-112 requires any person who is not a licensed gun dealer to satisfy two requirements before transferring possession of a firearm to a transferee: (1) ensure that a background check of the transferee is obtained by a licensed gun dealer; and (2) obtain approval of the transfer from the Colorado Bureau of Investigation. Colo. Rev. Stat. §§ 18-12-112(1) to (3).

---

[6] Mr. Sgaggio's emergency motion states that his son "paid over a $100.00 [sic] to get 4 firearms transferred out of his name[ ] [v]ia requirements [sic] of the protection order." Docket No. 11 at 8. This statement indicates that, even if Mr. Sgaggio's son would have transferred the firearms to Mr. Sgaggio, it is apparently impossible for him to do so because Mr. Sgaggio's son has already transferred the firearms to another recipient. As a result, there is no longer any actual controversy between the parties about whether Mr. Sgaggio may receive his son's firearms, and Mr. Sgaggio lacks standing to challenge § 18-1-1001. *See Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (holding that the Constitution permits federal courts to "decide legal questions only in the context of actual cases or controversies") (quotation marks omitted); U.S. Const., Art. III, § 2. Although a plaintiff may challenge a statute that no longer affects him on the basis that the claimed injury is "capable of repetition" while "evading review," *see Alvarez*, 558 U.S. at 93, Mr. Sgaggio's complaint contains no allegations that indicate that his claim warrants review on that basis.

Mr. Sgaggio's complaint does not allege that he has undergone a background check required by § 18-12-112; Docket No. 1.  Instead, Mr. Sgaggio appears to challenge the statute on the basis that it will require him to undergo a background check in the future.  To establish standing to bring this type of challenge, Mr. Sgaggio must "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *Babbitt*, 442 U.S. at 298.

Mr. Sgaggio's complaint states that he "seek[s] to transfer firearms and purchase firearms without doing back ground [sic] checks," but it does not describe any plans to transfer or purchase firearms. [7]  Docket No. 1 at 5.  The Supreme Court has held that a mere "profession of an 'inten[t]'" to engage in an activity without a description of concrete plans to do so is not enough to establish standing.  *Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.") (emphasis omitted); *cf. Susan B. Anthony List v. Dreihaus,* 573 U.S. 149, 161 (2014) (holding that petitioners who "pleaded specific statements they intend to make in future election cycles" had standing to challenge a statute prohibiting false statements during the course of a political campaign).  Mr.

---

[7] Mr. Sgaggio's reply to Governor Polis' response to his motion states that "[t]he Government in [sic] possession of at least 8 of [his] firearms" and claims that he will have to undergo a background check when they are returned.  Docket No. 32 at 3.  However, this allegation is contained nowhere in the complaint, and Mr. Sgaggio may not amend his complaint in a response to a defendant's motion to dismiss.  *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)).  Furthermore, § 18-12-112 governs only transfers of firearms by persons who are not licensed gun dealers, so factual allegations concerning the return of confiscated firearms by the police are not subject to § 18-12-112 and are irrelevant to Mr. Sgaggio's constitutional challenge to this statute.

9

Sgaggio's complaint does not state when he intends to purchase firearms[8] or provide any other details indicating that he has concrete plans to purchase firearms.[9] Accordingly, Mr. Sgaggio has failed to describe his plans in sufficient detail to establish that he is likely to suffer actual or imminent injury as a result of § 18-12-112. *See Lujan,* 504 U.S. at 564; *see also Koons v. Platkin,* 2023 WL 3478604, at *14-16 (D.N.J. May 16, 2023) (holding that plaintiffs who merely declared that they intended to apply for permits to purchase firearms without showing that they had taken steps toward obtaining a permit or stating the date on which they would need to renew an existing permit did not have standing to challenge a firearm permitting scheme because they failed to allege that their future injury was imminent). Thus, Mr. Sgaggio has failed to establish standing to challenge § 18-12-112.

### 3. Section 13-14.5-103: Temporary ERPO

Mr. Sgaggio's complaint alleges that he is "in Government Cross hairs [sic]" as a result of being a spiritual guide, journalist, and civil rights activist. Docket No. 1 at 5. He does not allege that he is currently subject to an ERPO, but instead claims that he faces a "credible threat" of having an ERPO issued against him in the future, especially

---

[8] Mr. Sgaggio's statement that he seeks to transfer firearms without undergoing a background check is irrelevant to his challenge to § 18-12-112 because the statute requires transferees, but not transferors, to undergo background checks. *See* Colo. Rev. Stat. § 18-12-112(1)(a)(I).

[9] Mr. Sgaggio's response to Governor Polis' motion to dismiss states that Mr. Sgaggio is "broke" and cannot afford to replace the guns his son was required to relinquish. Docket No. 37 at 8. He claims to have spent $16,000 in the last year on legal fees in connection to an audit by the IRS. Docket No. 32 at 6. . He also describes $10 as an "exorbitant fee." Docket No. 37 at 10. These statements further call into question the likelihood that he will actually purchase firearms and undergo a background check under § 18-12-112 and thus suffer an injury in fact.

after an April 2023 amendment to the law expanded the list of persons who can petition for issuance of an ERPO.  *Id.* at 6; *see* Colo. Rev. Stat. § 13-14.5-103(1)(b).

As discussed above, a plaintiff does not have standing to challenge a statute based on the threat of future enforcement unless he is able to demonstrate a "realistic danger of sustaining a direct injury."  *Babbitt*, 442 U.S. at 298.  Mr. Sgaggio has failed to do so.  First, before a court may issue an ERPO, § 13-14.5-103 requires one of the individuals enumerated in the statute to file a petition.  Colo. Rev. Stat. §§ 13-14.5-103(1)(a-b).  Mr. Sgaggio's complaint does not allege that any enumerated person has filed or threatened to file a petition for an ERPO against him.  *See generally* Docket No. 1.  Instead, Mr. Sgaggio explains that he believes that various people and entities, including Mr. Allen, Dr. Anthony Fauci, and law enforcement, generally, could request an ERPO against him in retaliation for his activism.  *Id.* at 5-7.  In the absence of any allegation that any person listed in the statute has petitioned for an ERPO or threatened to do so, these statements are insufficient to establish a realistic danger of future injury.  *See Clapper v. Amnesty Int'l USA,* 568 U.S. at 398, 414 (2013) (finding no standing where petitioner's argument that injury was imminent "rest[ed] on speculation about the decisions of independent actors"); *see also D.L.S.*, 374 F.3d at 974 (holding that a plaintiff did not have standing to challenge a sodomy law where it was undisputed that he had "never been charged with sodomy, prosecuted under the statute, or directly threatened with prosecution" and additional evidence indicated that such prosecution was unlikely).

Second, a court may grant a petition for an ERPO only if it is shown by a preponderance of the evidence that the subject of the order "poses a significant risk of

11

causing personal injury to self or others in the near future." Colo. Rev. Stat. § 13-14.5-103(3).  Mr. Sgaggio has alleged no facts that indicate a court is likely to make this finding even if a petition for an ERPO against Mr. Sgaggio were filed.[10]  *See generally* Docket No. 1.  Thus, Mr. Sgaggio's allegations concerning the possibility of being subject to an ERPO do not demonstrate a credible threat of prosecution and are insufficient to establish standing to challenge § 13-14.5-103.

"The federal courts are under an important obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." *FW/PBS,* 493 U.S. at 231 (citation, quotation marks, and brackets omitted).  In absence of jurisdiction, a court is "powerless to continue." *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) (citation and quotation omitted).  Because Mr. Sgaggio does not have standing to pursue his constitutional challenge to the statutes he challenges, the Court will dismiss the action for lack of jurisdiction and dismiss his emergency motion as moot.[11]

---

[10] Mr. Sgaggio's responses to the motions to dismiss discuss an incident in which he claims that he attempted to serve a lawsuit on a police liaison and was told by an investigator, "[y]ou can't use harsh and violent language."  Docket No. 37 at 5-7; Docket No. 38 at 7-8.  Mr. Sgaggio states that this "accusation" is sufficient to subject him to an ERPO because it constitutes a statement that he is a threat to others.  Docket No. 37 at 6; Docket No. 38 at 8.  However, Mr. Sgaggio's complaint does not discuss this incident and Mr. Sgaggio may not amend his complaint in a response to a defendant's motion to dismiss.  *Abdulina*, 79 F. Supp. 3d at 1206 (citing *Jojola,* 55 F.3d at 494).  Furthermore, Mr. Sgaggio has provided no support for the argument that a court is likely to grant a petition for an ERPO because the subject of the order was warned not to use harsh and violent language.

[11] Having found that it lacks jurisdiction over the action, the Court will not reach the merits of Mr. Sgaggio's claim.

## V. CONCLUSION

Therefore, it is

**ORDERED** that Defendant Michael J. Allen's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Docket No. 26] is **GRANTED**.  It is further

**ORDERED** that Governor Polis's Motion to Dismiss [Docket No. 30] is **GRANTED**.  It is further

**ORDERED** that Mr. Sgaggio's claim is **DISMISSED without prejudice** for lack of standing.  It is further

**ORDERED** that Emergency Motion for Temporary Restraining Order and for Preliminary Injunction [Docket No. 11] is **DENIED** as moot.  It is further

**ORDERED** that this case is closed.

DATED July 6, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge